**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | : | |
| **In Re: THE GAP, INC.,** | : | |
| **COVID-19 LEASE PAYMENT LITIGATIONS** | : | **MDL No. 2960** |
| | : | |
| _____ | : | |

**48TH AMERICAS LLC'S MEMORANDUM OF LAW OF IN OPPOSITION TO**
**THE GAP, INC.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1407**

**THE KLEIN LAW GROUP CRE, PLLC**
*Attorneys for 48th Americas, LLC*
275 Madison Avenue, 33rd Floor
New York, New York 10016
(212) 661-9400

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT……………………………………………………….……1

STATEMENT FACTS………………………………………………………………………….2

ARGUMENT……………………………………………………………….......................4

POINT I  -   MOVANT'S REQUEST TO TRANSFER AND
CONSOLIDATE THIRTY-THREE DIFFERENT
CASES FROM TEN STATES AND THIRTEEN
JUDICIAL DISTRICTS SHOULD BE DENIED ………...………...4

A.      The Burden of Proof……………………………………….……………4

B.      Movant Cannot Satisfy Its Burden of Proof………………………... 6

1.   The Actions Do Not Involve Common Questions of Fact……..…7

2.   Transferring The Actions Will Not Convenience
The Parties Or Witnesses And Will Not Promote
The Just And Efficient Conduct Of The Actions………………12

CONCLUSION......................................................................................................15

## PRELIMINARY STATEMENT

48TH AMERICAS LLC (hereinafter, "Respondent"), by and through its undersigned counsel, Klein Law Group CRE, PLLC, hereby files this Memorandum of Law in Opposition to the Motion to Transfer Venue, pursuant to 28 U.S.C. §1407 ("Motion to Transfer") (Docket No. 1).

Respondent, named in only one case, as the plaintiff in 48th Americas, LLC v. The Gap, Inc., No. 1:20-cv-03471-PGG (S.D.N.Y.), pending in the United States District Court for the Southern District of New York (hereinafter, the "Underlying Action"), opposes the motion of The Gap, Inc. (hereinafter, the "Movant") for transfer and consolidation of thirty-three different, distinct and separate cases from a total of thirteen judicial districts and ten states, the so-called COVID-19 lease nonpayment cases (collectively, the "Actions").  As explained below, the Actions do not, beyond a superficial glance, concern common questions of fact, the proposed transfer does not and would not serve the convenience of the parties and witness, and transfer and consolidation will not further the just and efficient conduct of the Actions, which involve distinctly different properties, leases, landlords, claims, and local governmental shelter-in-place orders and policies.  It is anticipated that the opposition of the vast majority, if not all, landlords to the Motion to Transfer will confirm that nation-wide centralization of a state law issue such as commercial real estate litigation is unworkable and inappropriate in this instance, and thus should be denied.

Differences in the terms of the leases, the parties and their counsel negotiating and writing the leases, the various localized shelter-in-place orders, and the claims and causes of action asserted, combine to make the Actions dramatically different from one another, with virtually no issues of fact common to all or even most actions. Moreover, the many non-

overlapping landlord parties in the actions, each with its own business strategies, organizational structures and properties, ensure that consolidation would create more inefficiencies and conflicts than it could potentially solve.

Based on a cursory description of the complaints, leases and issues raised in the various actions it seeks to consolidate, Movant claims that these cases involve "common questions of fact concern[ing] the highly complex relationship between the rapidly evolving COVID-pandemic and the public-safety and business environment in which Gap's stores operate," and so should be consolidated and centralized. (Docket No. 1-1 at 2-3.)  Even a brief review of the facts, however, reveals a far different picture - - thirty-three cases, asserting a multitude of claims, causes of action and legal theories, brought in connection with a wide variety of different leases with different lease clauses and provisions issued by no less than twenty-seven landlords.  The only common thread connecting the thirty-three cases is the COVID-19 pandemic.  That is not enough to justify transfer and consolidation under 28 U.S.C. § 1407.

## STATEMENT OF FACTS

On or about May 7, 2020, Respondent commenced the Underlying Action against Movant by filing the Summons and Complaint. A copy of the Amended Complaint, dated May 26, 2020 the "Complaint"), is annexed as Exhibit "4" to the accompany Declaration of Efrem Z. Fischer, dated August 28, 2020 ("Fischer Decl.").   The Panel is respectfully referred to the material facts set forth in the Complaint.

Briefly stated, on or about February 25, 1991, Movant, a clothing and accessories retailer, entered into a written commercial lease (as further amended, the "Lease") with its landlord, Respondent, pursuant to which, Movant was demised portions of the ground floor, basement, and entire second floor in the building located at and known as 1212 Avenue of the Americas, New

York, New York (collectively the "Premises"), to operate a retail store. [A copy of the Agreement of Lease, dated as of February 25, 1991, is annexed to the Declaration of Axel Stawski, dated August 26, 2020 ("Stawski Decl.") at Exhibit "1"].  On two separate occasions, September 22, 2004 and May 18, 2015, in New York, the parties negotiated and agreed to extend and modify the terms of the Lease. The Lease provides, *inter alia*, that, for the relevant period at issue in this action, the Fixed Rent is $3,170,280.30 per year, or $264,190.03 per month, and that Movant is responsible for items of Additional Rent. [Stawski Decl. at ¶¶6-12 and Exhibits "2" and "3"].

Movant breached the terms of the Lease by failing to pay Respondent the Fixed Rent due each month as well as other items of Additional Rent. Presently, there is now due Respondent the sum of $1,533,938.02 in Fixed Rent and $33,342.85 in Additional Rent for a total amount due of $1,567,280.87. Further, Respondent has incurred significant legal expenses in enforcing the terms of the Lease. [Stawski Decl. at ¶13].  Movant does not dispute the existence of the Lease, or that it failed to pay these sums. Instead, it seeks this unprecedented consolidation and transfer to the Multi District Litigation Panel, a blatant delaying tactic to avoid its obligation to pay.

Based upon the absence of any material issues of fact, Respondent filed and served a letter with the court in the Underlying Action requesting a pre-motion conference for permission to move for summary judgment on its claims for breach of contract and attorneys' fees. Predictably, the Movant opposed that request and re-affirmed its plan to delay the Underlying Action by stating its intention to move to stay said action. [Fischer Decl. at ¶¶5-6 and Exhibits "7" and "8"]. Respondent's request for a pre-motion conference is presently pending.

**ARGUMENT**

**POINT I**

**MOVANT'S REQUEST TO TRANSFER AND CONSOLIDATE
THIRTY-THREE DIFFERENT CASES FROM TEN STATES AND
THIRTEEN JUDICIAL DISTRICTS SHOULD BE DENIED**

**A.  The Burden of Proof**

28 U.S.C §1407(a)  authorizes the transfer and consolidation of civil actions from different districts with "common questions of fact" if the judicial panel on multidistrict litigation ("Panel") determines "that transfers for such proceedings will be for the convenience of parties and  witnesses and will promote the just and efficient conduct of such actions." Movant has the burden of proving that transfer under 28 U.S.C. §1407 is appropriate. *See In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980); *See, e.g., In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011).  That burden is substantial, and Movant cannot carry that burden here.

Movant does not and cannot demonstrate that the Actions have enough overlapping facts to warrant transfer and consolidation. Sharing "some general common factual questions" is not enough.  *In re: Auction Rate Sec. (ARS) Mktg. Litig.*, 581 F. Supp. 2d 1371, 1372 (J.P.M.L. 2008). Indeed, transfer should be denied where, as here, common factual questions are not "sufficiently complex and/or numerous," *id*., or where "certified and putative classes will likely not overlap significantly." *In re: Gen. Mills, Inc., Yoplus Yogurt Prod. Mktg. & Sales Practices Litig.*, 716 F. Supp. 2d 1371, 1372 (J.P.M.L. 2010); *In re Cessana Aircraft Distributorship Antitrust Litig.*, 460 F. Supp. 159, 161-62 (J.P.M.L. 1978) ("mere showing that [common] questions exist is not sufficient, in and of itself, to warrant transfer by the  Panel"). As the Panel has repeatedly emphasized, centralization under Section 1407 "should be the last solution after

4

considered review of all other options." *In re: Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (*quoting In re: Best Buy Co. Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d. 1376 (J.P.M.L. 2011)).

Most recently, in *In re Covid-19 Bus. Interruption Prot. Ins. Litig.*, 2020 U.S. Dist. LEXIS 144446 (J.P.M.L. 2942, August 12, 2020), the Panel was confronted with two motions to transfer and consolidate, pursuant to 28 U.S.C. §1407, fifteen actions,[1] asserting, *inter alia*, declaratory judgment and or breach of contract claims against providers of commercial property insurance. The plaintiffs therein alleged that the insurance policies provide coverage for business interruption losses caused by the COVID-19 pandemic and the related government orders suspending, or severely curtailing, operations of non-essential businesses.  In denying the motion to transfer, the Panel relied, in part, on the fact that the cases arose from distinctly different insurance policies with different operative provisions.  Significantly, the Panel found that "[w]hile the policy language for business income and civil authority coverages may be very similar among the policies, seemingly minor differences in policy language could have significant impact on the scope of coverage." The Panel thus held that the requested MDL "entails very few common questions of fact, which are outweighed by the substantial convenience and efficiency challenges posed by managing a litigation involving the entire insurance industry."  Similarly, in the instant case, the differences in the provisions and language in over thirty leases, negotiated and drafted by twenty-seven different landlords and their counsel regarding thirty-three different properties and multiple localized shelter-in-place orders will overwhelm any common factual question which solely consist of Movant's attempt to exploit the COVID-19 pandemic to avoid its obligation to pay rent. *Id*. ("These differences will overwhelm any common factual questions").

---

[1] Plaintiffs in more than 175 actions or related action responded to the subject motions.

**B.**  **Movant Cannot Satisfy Its Burden Of Proof**

In the face of the Panel's oft-expressed skepticism of consolidation, and the non-existence of any consolidation of lease nonpayment cases to the MDL, Movant cannot demonstrate that their proposal for joinder of all COVID-19 lease nonpayment cases will produce any real efficiencies or other benefits.  As a result, transfer and consolidation should be denied. Simply put, as set forth below, Movant's latest tactic is wholly without merit, and is merely an attempt to exploit the COVID-19 pandemic to escape its liability under the Lease.

If you strip away all of the rhetoric, the Motion to Transfer seeks to wedge cases brought by and against multiple landlords into one MDL proceeding that would dramatically complicate, not simplify, the cases. First, the commercial landlord-tenant business is uniquely governed by state law which will control the outcome of any particular lease dispute, and therefore, any commercial landlord-tenant disputes are particularly unsuitable for MDL proceedings. Furthermore, there are no common issues of fact or law that traverse the proposed MDL or govern cases by and against numerous individual landlords, each with their own individual leases and properties, and subject to shelter-in-place orders issued in states with different applicable laws. To further make the case unsuitable for MDL treatment, there are no common issues of law or fact as to even one landlord, as each utilizes multiple lease forms, with uniquely crafted lease riders, rather than a standard form used nationwide by the entire commercial real estate industry.

The types of landlords and tenant businesses to be addressed in these cases also vary widely and would require a panoply of different experts to address the claims unique to each tenant's individual business and business environment.  The variation in lease language and facts is even wider and less standard than in many other contexts. Centralizing these cases in one district, therefore, not only would create no meaningful efficiencies, it would be far less efficient

than permitting federal courts to apply the commercial real property and contract laws of the states where they sit, with which they are familiar.  For these reasons, the Motion to Transfer should be denied.

### 1.  The Actions Do Not Involve Common Questions of Fact

The factual overlap among the Actions starts and finishes with the COVID-19 pandemic and the refusal of Movant to satisfy its payment obligations under the various leases, relying on COVID-19. Thus, the actions "possess only a superficial factual commonality."  *In re Fla., Puerto Rico*, & U.S. Virgin Islands 2016 & 2017 Hurricane Seasons Flood Claims Litig., 325 F. Supp. 3d 1367, 1368 (J.P.M.L. 2018).

As mentioned previously, there are many landlords and leases from multiple states involved in these lease nonpayment litigations. The leases are not uniform. They have differences in available clauses, terms, and conditions. Interpretation of the leases will likely play a significant role in this lease nonpayment litigation, as the numerous parties will have different theories and arguments regarding performance during the COVID-19 pandemic and under the various shelter-in-place orders. It is well settled that, unless there exists a preemptive federal law, commercial landlord-tenant and contract law is a substantive issue governed and interpreted in accordance with state law. *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 153 (2d Cir. 1968) (Friendly, J.) ("The development of a federal common law of contracts is justified only when required by a distinctive national policy . . . .") (quotation marks omitted). As such, lease interpretation will differ by state, and the impact of state law on these leases and the substance of the leases themselves can in turn influence a party's strategy and discovery. Simply put, the differing methods of interpreting lease contracts is a significant factor that weighs against multidistrict litigation.

The failure of Movants to satisfy the first requirement of 28 U.S.C. §1407 - - demonstrating common questions of fact - - is further evident from the Motion to Transfer's competing claims on the issue.  On the one hand, the Movant alleges "the frustration of the essential purposes of its retail store leases, excused GAP from its obligation to pay rent." (Docket No. 1-1 at 10.)  In contrast, the Motion to Transfer then claims "factual questions concerning such matters as the public safety issues posed by COVID-19 in general and to its retail stores . . .   the government orders mandating closures." (Docket No. 1-1 at 11.)  This conflation of factual issues within the same Motion to Transfer, such as the admitted failure to pay on the one hand, and the differing leases and localized shelter-in-place orders on the other, highlights the critical factual differences amongst the Actions that the Motion to Transfer fails to address, *i.e.*, different leases, landlords, properties, and shelter-in-place orders. Differences like these among the subject landlords and leases have led the Panel to conclude in other matters that such litigation does not contain "sufficient common questions of fact to justify" the requested nationwide centralization. *In re Credit Card Payment Prot. Plan Mktg. and Sales Practices Litig.*, 753 F. Supp. 2d 1375,  1376 (J.P.M.L. 2010). Instead, such differences are likely to give rise to individualized and case-specific factual, discovery and legal issues that will likely be numerous and substantial.

It is self-evident that no court can reach any result in any of the Actions without first interpreting the underlying lease's operative language. The threshold questions of contractual meaning necessary to these cases are wholly inappropriate for centralization because they will require any court that entertains them to analyze each and every lease individually to determine the parties' obligations and the limited parameters for excusing payment obligations. These questions include what circumstances could trigger each lease's specific *force majeure* clause,

whether the COVID-19 pandemic was foreseeable, and whether Movant was able to continue to use the property as the parties intended under the subject lease.

By way of illustration, the Lease entered into between Respondent and Movant permits and intends the use of the subject premises as a retail store, for storage of stock and for office purposes. In contrast, other leases limit the use of the premises to "retail" purposes and different operative language, as exemplified in Table 1:

**Table 1: Sample Variations In Permitted Use Clauses In Lease**

| **Landlord** | **Lease Language** |
| --- | --- |
| 48th Americas LLC (Stawski Decl.; Exhibit "1" at Lease Art. 13.1) | "storage of stock" and "office purposes." |
| State Randolph LLC (Docket No. 1-11, at Lease Art. 1.1(r )) | "Retail sale of women's men and children's closing and accessories" |
| Strip Delaware LLC (Docket No. 1-21, at Lease Art. 3.01) | "Any lawful retail purpose or purposes", "ATM's", "Vending Machines" and "Coffee and Juice Bar" |
| CP Commercial Delaware LLC (Banana Republic LLC) (Docket No. 1-23, at Lease Arts. 1.18 and 13.1) | "Primarily for the sale of wearing apparel and related accessories" |
| CP Commercial Delaware LLC (The Gap, Inc.) (Docket No. 1-24, at Lease Arts. 1.18 and 13) | Primarily for the sale of wearing apparel and related accessories," subject to the restrictions of 13.2 and 13.3 |

As illustrated above in Table 1, the very first step of any lease dispute analysis - - reviewing the lease clause's language - - is far from uniform across commercial leases. In light of this unavoidable reality, any court that decides these cases will be required to determine how a lease that permits and intends for storage of stock and office purposes interacts with a coronavirus claim differently than a lease that limits its use to the "sale of wearing apparel and accessories." Inevitably, every single lease clause will have to be examined individually in the

context of the actual claim or cause of action before a court could reach any conclusion about whether the Movant can avoid its liability under the respective lease.

Moreover, the individualized issues will continue with respect to the governmental orders which allegedly give rise to all of the Movant's claims. The Lease at issue in the Underlying Action does not even provide an excuse to avoid payment during a governmental shutdown, yet this is may be a primary issue in other cases that the Movant seeks to consolidate.  Such issues in the lease nonpayment litigation will include the differing civil authority regulations (or lack thereof) designed to address the spread of COVID-19, including when the order became effective, the types of businesses that were affected, the level of restrictions placed upon businesses (e.g., full closures vs. reducing the hours of operation vs. limited the capacity of customer), and the length of time the restrictions were in effect. Importantly, many states never issued an order requiring businesses to completely shut down. Furthermore, even in those states which required businesses to close down, there were differences between the orders requiring the investigation of specific questions such as (1) was the Movant considered an "essential business" and, thus, allowed to continue operating, (2) even if the business was not deemed as "essential," did the state or local jurisdiction permit the business to remain partially open, (3) for what date(s) was a particular Movant store subject to a closure order and how did it respond, and (4) why, precisely, did the Movant cease operating its business - - because the government required it, or because, for example, the business is dependent on foot-traffic and suffered because people stopped travelling when news of COVID-19 became public. Resolution of these individual issues will be necessary in any litigation based on a theory of governmental orders triggering lease provisions that allegedly excuse payment. These issues are individualized.  However, they are not sufficiently complex such that a consolidated proceeding is necessary to determine what

governmental orders were issued, and whether a particular Movant store was subject to the orders.

Undoubtedly, combining the cases for the purpose of determining the effective date and effect of the governmental orders will not determine or facilitate the resolution of any pending case brought by or against these landlords. For all of the leases, Movant will be required to show that it is in a jurisdiction where an order was issued requiring it to allegedly stop operating.

Similarly, because the landlords do not all have the same lease, the different leases will provide different provisions for when a tenant is excused from payment, if at all.  Each lease will provide for different definitions, terms and conditions in each lease. An additional material issue that will not be the same for all parties concerns the Movant's compliance with the lease terms and conditions of the leases, e.g., the Movant may have complied with the terms and conditions of their leases at some properties, but may have only partially complied or failed to comply with the terms and conditions of their leases. In that regard, the Movant's compliance/noncompliance can have significantly different consequences depending on the state law that applies to the subject lease. A related issue that will not be the same for all landlords is the extent to which they suffered losses, i.e., the amount of damages.

Finally, while Movants have attempted to identify several "horn-book law" common legal issues such as breach of contract, that may arise in the Actions, common questions of law are insufficient to warrant transfer and consolidation under § 1407. *See, e.g., In re Clean Water Rule: Definition of "Waters of the United States"*, 140 F. Supp. 3d 1340, 1341 (J.P.M.L. 2015) ("[T]hese actions will turn on questions of law . . . . Accordingly, centralization under Section 1407 is inappropriate.").

In sum, the Action do not involve common questions of facts, and therefore, the Motion to Transfer should be denied.

### 2.    Transferring The Actions Will Not Convenience The Parties Or Witnesses And Will Not Promote The Just And Efficient Conduct Of The Actions

The existence of approximately twenty-seven different landlords, thirty-three different Actions, thirteen judicial districts and ten states overwhelms the superficial factual similarities among the Actions for the purposes of transfer and consolidation. Further, MDLs have the potential to prolong pretrial proceedings because of the need for separate discovery and motion tracks. *See, e.g., In re Proton Pump Inhibitor Products Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017); *In re Invokana (Canagliflozin) Products Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016).    *In re Proton Pump Inhibitor Products Liab. Litig.* is particularly instructive in that regard.   In that decision, the Panel recognized that each of the plaintiffs' cases stemmed from allegations that taking pump inhibitors could "result in various types of kidney injury," but the Panel still denied MDL consolidation. *Id*. at 1361.   The Panel noted that "the named defendants var[ied] from action to action," meaning that consolidation was "unlikely to serve the convenience of most, if not all, defendants and their witnesses."  *Id*. at 1361-62; *In re Ambulatory Pain Pump-Chondrolysis Products Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying consolidation of over one hundred cases in part because most of the defendants were named "in only a minority of actions").

The Panel, in *In re Proton-Pump Inhibitor*, also recognized that a significant amount of discovery was "almost certain to be defendant-specific" and that the prospect of future cases (even "by the hundreds") does not affect the initial calculus as to whether MDL consolidation is appropriate.  *In re Proton Pump Inhibitor*, 273 F. Supp. 3d at 1362.  The same pivotal factors that proved decisive in *In re Proton-Pump Inhibitor* equally apply here.  The named landlords

vary from case to case, and thus consolidation is "unlikely to serve the convenience of most, if not all, defendants and their witnesses." 273 F. Supp. 3d at 1362. In that regard, no steps have been taken by Movant to pursue alternatives to centralization. Movant did not engage in any informal coordination of discovery or scheduling, and did not seek to change venue under 28 U.S.C. §1404. Accordingly, because Movant does not and cannot carry their burden of proving that transfer and consolidation are warranted under 28 U.S.C. §1407, the Motion to Transfer should be denied.

Movant's heavy reliance upon *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 405 F. Supp. 316 (J.P.M.L. 1975), is entirely misplaced. In that case, Westinghouse Electric Corporation was sued for its failure to honor contractual obligations to sell uranium to the plaintiff utility companies. Relying on Section 2-615 of the Uniform Commercial Code, Westinghouse Electric Corporation claimed its performance under the contracts was excused based upon the commercial impracticability of the price and supply of uranium. The Panel found common issues of law and fact to warrant transfer under 28 U.S.C. §1407. However, in *Westinghouse*, the factual determination of the commercial impracticability of the price and supply of uranium, under 2-615 of the Uniform Commercial Code, was the sole issue. By way of contract, in the instant Motion, the Actions implicate a multitude of state laws, shelter-in-place orders, various lease provisions, and whether the effects of the COVID-19 pandemic were foreseeable to be negotiated for in the leases. As such, *Westinghouse* is clearly inapposite to the case at bar.

Significantly, judicial economy will not be served by inconveniencing the many parties and their counsel who do not reside in or maintain business offices in the proposed venue. Many, if not most, of the parties and their counsel - including Respondent and its counsel - do

not have places of business in California, and litigating in California would inconvenience those parties and their counsel. For instance, Respondent and its counsel are located in New York, New York, while Movant is in San Francisco, California (Movant also has offices in New York, New York). Respondent's affected property is located in New York, and the Lease to the Premises was negotiated and executed in New York. Many other parties engaged in the nonpayment litigation will be similarly inconvenienced by having the litigation take place outside of the district where their respective lawsuits were originally filed.

Finally, judicial economy will not be served by combining the Actions because additional lawsuits involving more landlords and more leases will likely arise in the future. As Movant continues to weather the adverse economic impact of COVID-19 and assess its losses, it is very likely that more lease nonpayment cases against Movant will follow in the coming days, months, and even years, as additional Movant stores close.[2] The likely scenario of future COVID-19 nonpayment lawsuits involving different landlords and different leases makes it less likely that multidistrict litigation would be significantly more efficient and lead to more uniform.

In sum, because judicial economy will not be served by combining the Actions, the Motion to Transfer should be denied.

---

[2] Subsequent to the filing of the instant Motion to Transfer, Movant permanently closed additional stores. *See, e.g.,* Shwanika Narayan, "Most San Francisco Gap stores close permanently, including Market Street flagship", San Francisco Chronicle  (August 18, 2020)

## <u>CONCLUSION</u>

For the foregoing reasons, the multidistrict litigation model is inappropriate for COVID-19 lease nonpayment litigation, and the Motion to Transfer should, therefore, be denied.

Dated: New York, New York
        August 28, 2020

**THE KLEIN LAW GROUP CRE, PLLC**

By: <u>s/Efrem Z. Fischer</u>
    Efrem Z. Fischer (EF-3860)
    Attorneys for 48th Americas, LLC
    275 Madison Avenue, 33rd Floor
    New York, New York 10016
    Tel.: (212) 661-9400
    Fax: (212) 661-6606
    E-Mail: Efrem@KleinLawGroupNY.com